# J. B. WATKINS v. THE NATIONAL BANK OF LAWRENCE et al.

1. FACTS, *When Taken as True.* Facts conceded by the pleadings and accepted as true in the district court cannot be made subjects of controversy in the supreme court.

2. NATIONAL BANK—*Liquidation.* A national bank may go into liquidation and be closed by a vote of its shareholders owning two-thirds. of its stock; and this right may be exercised although it may be contrary to the wishes, and against the interests, of the owners of the minority of the stock.

3. ——— *Estoppel.* A party who, with full knowledge of all the steps taken in placing a bank in liquidation, receives and retains a dividend paid by the officers in control of the liquidating bank, will not be heard to deny the validity of the liquidation.

4. RECEIVER—*Appointment—Discretion of Court.* The appointment of a receiver rests largely within the discretion of the court, and before it will take the property and business of a liquidating bank from the control of the directors into its own hands, upon the application of a stockholder, it must appear that the danger of loss or injury to the rights of the plaintiff is clearly proved, and the necessity and right for the appointment of a receiver free from reasonable doubt.

5. EVIDENCE—*Judgment, not Disturbed.* The court found, upon testimony somewhat conflicting, that the directors of the liquidating bank were acting with reasonable diligence and economy in closing the business of the bank and declined to appoint a receiver. *Held,* Upon an examination of the testimony, that the finding and judgment will not be disturbed.

*Error from Douglas District Court.*

PROCEEDINGS by *Watkins* against *The National Bank of Lawrence* and others, to appoint a receiver and close up its affairs. At the February term, 1890, the district court refused to appoint a receiver, and plaintiff comes to this court. The opinion states the facts.

*T. A. Hurd, S. A. Riggs,* and *W. J. Patterson,* for plaintiff in error:

We contend that these five defendants [Bowersock, Vaughan, Sparr, Brown, and Hadley] have not now and never have

had, since the 11th day of April, 1889, any lawful right or
authority, as directors of the defendant bank or otherwise, to
interfere with its property or to manage its business, and were
and are usurpers; that at least from April 11, 1889, they
have not been eligible to the office of directors of said bank,
as neither of them has held or holds 10 shares of its stock
in his own right; that the pretended election to place the de-
fendant bank in liquidation was wholly void, because the
persons voting for the resolution were not the owners of the
stocks voted or any part of it; and that the court should take
possession of the property, and appoint a receiver to take the
charge and control of the property and business of the said
bank.

If it were conceded that these men are lawfully the direct-
ors of the defendant bank, we contend that they have not
proceeded and are not proceeding honestly and in good faith
to close up the business of the bank for the benefit of any of
the stockholders other than the Douglas County National
Bank, and it is their intent and purpose to so manage its
business that the plaintiff and the other minority stockholders
shall realize little if any part of the value of the stock owned
by them, and that they are proceeding in fraud of the rights
of such minority stockholders; and that the evidence pro-
duced fully sustains all the charges of malfeasance charged in
the plaintiff's amended petition herein.

The evidence shows that these individual defendants are
not acting fairly toward the plaintiff or the defendant bank,
and that the purpose of the purchase of the stock before
mentioned was, that the Douglas County National Bank
might absorb the good will and business of the defendant
bank without payment therefor, and that these defendants, as
directors of both banks, are directing and managing their
business so as to subserve such purpose.

We are not unmindful of the allegations of the petition
and the admissions of the answer; but evidence was intro-
duced on the trial, without objection, contradicting both, and
making out a different case than as stated in pleadings in

some material respects.   The case must be decided on the evidence produced; and, if either party requires it, the court may direct the amendment of the pleadings to correspond to the facts proved.  Gen. Stat. of 1889, ¶¶ 4246, 4247.

*S. O. Thacher,* for defendants in error:

The pleadings must govern the trial and the appellate court as to what the issues were, and what facts must be taken as true and cannot be controverted.   Counsel for plaintiff seem to have some idea of this inflexible rule, for, at the close of their brief, they admit they "are not unmindful of the allegations of the petition and the admissions of the answer," and their argument rests on supposed facts "contradicting both."   In other words, we are now asked in this court of review to consider a case not presented by the pleadings, a case not heard or tried in the court below.   Is such a request fair to the trial court?   Certainly it is not allowable here. *Gray v. Crockett,* 30 Kas. 138; *Sargent v. K. M. Rld. Co.,* 48 id. 679.   See, also, *Brenner v. Bigelow,* 8 Kas. 496; *Brookover v. Esterly,* 12 id. 152.

From the facts averred in the petition and admitted and averred in the answer, it follows that the defendants' position as duly-elected directors and officers of the defendant bank cannot be assailed in this court.   Neither is the lawful liquidation of the defendant bank open to attack.   The petition and answer both agree that the necessary two-thirds of the stockholders voted to place it in liquidation.

This court has so often said that it would not disturb the findings of a court or the verdict of a jury where the evidence was conflicting, or where there was evidence sustaining the finding or verdict, that a citation of authorities is needless.

The court heard the testimony of all the parties, for and against, and properly held that the plaintiff had failed to make a case for the wresting of the assets of the defendant bank from the hands of its "legally-elected" custodians and confide them to a stranger.   The chancellor exercises the best of his own powers, and looks with caution on any invasion

of private ownership or possession by the summary decree of his court. High, Rec., §§ 7, 8, and note; *Blondheim v. Moore*, 11 Md. 365.

The plaintiff seeks to have the court go back of the pleadings to try the question whether these defendants were directors. While this cannot be done, yet it is to be observed that the evidence does not sustain his contention. The stock books of the corporation are the only evidence admissible as to stockholders, either for purposes of voting or for asserting statutory liabilities. *Ex parte Wilson*, 7 Cow. 402; *Ex parte Basher*, 6 Wend. 509; *Richmond v. Irven*, 121 N. Y. 58; Beach, Corp., § 220; Mor. Corp., § 1009.

The motives of the defendants in buying the stock of the National Bank of Lawrence are not a subject of judicial inquiry. The act being a lawful one, courts do not concern themselves with the reason. *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.*, 18 Kas. 169–181; *Irwin v. Oregon Rly. & Nav. Co.*, 20 Fed. Rep. 577; *Duryee v. Old Colony Rld. Co.*, 87 Mass. 242.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding brings up for review a ruling of the district court of Douglas county refusing to appoint a receiver for the National Bank of Lawrence, which was in process of voluntary liquidation. The appointment of a receiver to wind up the business of the corporation seems to have been the sole purpose of the action. It was brought by J. B. Watkins, a stockholder of the bank, on November 15, 1889, against the board of directors, who were duly elected in May, 1889, and who had been in control of the bank since that time. In his petition, he says that the bank was organized in 1866, with a capital stock of 1,000 shares of the par value of $100 each, and that for several years prior to the commencement of the action he was the owner of 261 shares of the stock. He further alleges, that on June 17, 1889, at a meeting of the stockholders, a resolution was adopted by the necessary two-thirds of the capital stock to place the bank in

the process of voluntary liquidation, to take effect on the 29th day of June, 1889. He adds that the directors are not acting in good faith, nor endeavoring with due diligence to wind up the affairs of the bank for the benefit of the stockholders, and that his interest as a stockholder will suffer great loss and injury if the assets of the bank are left in the possession and under the control of the board of directors. In his petition are allegations that the directors were formerly interested in another bank, and that they had purchased the controlling interest in the defendant bank in order to obtain possession of its business and good will, and to deprive the plaintiff and other minor stockholders of the value of their stock in the defendant bank; that, while the purchase of the stock was in the names of individuals, it was really intended to be for the rival bank and for its benefit and advantage, but that they were not the owners of the stock when the bank was placed in liquidation, and therefore it is argued that they had no lawful right or authority to act as the directors of the bank or otherwise. The defendants denied the charges of bad faith, and alleged that they were fairly and honestly administering the affairs of the bank, and were closing up its business with diligence, discretion, and honesty. A large volume of testimony was taken with reference to their conduct, in which there is considerable conflict, and upon which the court declined to take the property from the management of the directors and place it in the hands of a receiver.

There is some testimony, and the arguments of counsel are largely directed to the claim, that the placing of the bank in liquidation was without authority, because the persons voting for the resolutions were not the owners of the stocks voted; that the stocks so voted belonged to the rival bank, called the Douglas County National Bank; that the defendant directors in whose names the stock was taken really purchased the same in the interest of the Douglas County National Bank; and that, as the stock was owned by the bank and not by the directors, they were ineligible to the office of directors of the defendant bank, and that all their acts in rela-

tion to the defendant bank and its business were unlawful and void.   These questions were not in issue in the court below, and are not open for consideration now.   In his petition, the plaintiff distinctly avers that the defendants were duly elected as directors, and "are still the duly-qualified and acting directors of said national bank."   The truth of these aver-

1. Facts, when taken as true. ments is admitted in the answer, and hence the legality and qualification of these directors were not subjects for investigation in the district court, and cannot be inquired into here.   Nor is the action of the stockholders in voting to place the bank in liquidation open to attack by the plaintiff.   It is alleged in the petition and answer that the bank is in process of liquidation, and the plaintiff states that the resolution was adopted by the votes of persons "then holding in their names the necessary two-thirds of the capital stock of said bank."   It appears that notice of this meeting had been given, and the plaintiff participated in the meeting, and his stock was voted in opposition to the resolution.   It was the right of these stockholders to place the bank in voluntary liquidation.   The act of congress provides that any state bank may become a national association when the necessary two-thirds of the capital stock authorize the change to be made; and it further provides, that "any association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock."  (Rev. Stat. U. S., § 5220.) Parties who purchase stock in a national bank take it knowing that two-thirds of the stock of the bank may at any time

2. National bank —liquidation. vote it into liquidation.   This right may be exercised although it may be contrary to the wishes, and against the interests, of the owners of the minority of the stock.

Besides this right of the majority to place the bank in liquidation, and the concession of the pleadings that it had been accomplished, there is another reason why plaintiff is precluded from questioning the right of the defendants in voting the bank into liquidation or the validity of their action. It appears that, since the liquidation began, the directors in

control have reduced some of the assets to money and paid a dividend of 25 per cent. to each stockholder upon the stock held by him, and that the plaintiff, with full knowledge of all the facts relating to the putting of the bank into liquidation and to the acts of the defendants in its management and control since that time, accepted the dividend.   By the receipt and the retention of the dividend under these circumstances,

3. Estoppel.  the plaintiff recognized the validity of the liquidation and the competency of the officers declaring it.   He cannot be permitted to occupy the inconsistent position of repudiating the liquidation and at the same time accepting the fruits of it.

The liquidation not being open to inquiry, there remains the inquiry whether the defendant directors were acting in good faith and with reasonable care and diligence in administering the assets and winding up the business of the bank. The court below, after a full inquiry and upon some conflicting testimony, determined this question in the affirmative, and, upon an examination of the testimony, we see no good

4. Receiver— appointment —discretion of court.  reason to disturb its findings and judgment.   The appointment of a receiver rests largely within the discretion of the court, and, in a case of this kind, the mismanagement of the defendants and the danger of loss or injury to the rights of the plaintiff should be clearly proved in order to warrant the appointment.   It is a power which should never be doubtingly exercised, and the court should hesitate to take the property and business of a corporation from the control of the directors into its own hands, unless the danger of loss or injury is clear, and the right and necessity for appointment free from reasonable doubt. (Beach, Rec., §5.)

Testimony has been offered tending to show that the defendants were conducting the business in such a way as to obtain the business for the Douglas County National Bank which was formerly transacted by the defendant bank.   The name of the Douglas County National Bank was changed to the Lawrence National Bank, and that bank removed its

place of business to that which was formerly occupied by the defendant bank. On the other hand, it is shown that the change of name was made in April, long prior to the liquidation of the defendant bank; and further, that they were paying the full rental value of the premises which they occupied. It is shown that the defendants offered plaintiff $150 per share for the stock which had cost him $70 per share. The liquidation was begun on the 29th day of June, 1889, and it had only proceeded about four months when this and other actions were begun by plaintiff, which, to some extent, have interrupted the process and delayed the completion of the adjustment. During the time that the directors have been administering the assets of the bank, they have declared a dividend of 25 per cent. on the capital stock. There is proof that they are acting with diligence and economy in winding up the affairs of the bank. Expenses of the management were reduced, unnecessary help was dispensed with, and, so far as appears, the full value of the assets disposed of, including the government bonds formerly owned by the bank, has been realized. There is nothing substantial with reference to the change of name. This was permitted by the comptroller, and can hardly be considered as a matter of consequence.

Much is said that the defendants permitted the other bank to appropriate the good will of the defendant bank without compensation, but there is little that is substantial in the good will of a liquidating bank. The plaintiff has a right to complain if by any unlawful combination the assets were not sold for their fair market value; but if the defendants were honestly administering the estate, and had obtained the fair value of the assets disposed of, including the rental of the building occupied by the defendant bank, the plaintiff has no reason to complain. After the bank is put into liquidation, the duty of the officers in charge consists in the collection and reduction to money of the assets of the bank, and the equal and ratable payment of this money among the creditors and stockholders as their rights may appear. When it went into liquidation,

it ceased to exist as a banking institution, and could no longer continue the ordinary banking business. It had no good will to transfer to another bank beyond the benefits which might result from the leasing of the premises which it formerly occupied, and in which its business was being closed up. This might enhance the rental value of the building leased to the Lawrence National Bank, but manifestly the court below has found that $100 per month, the rent received, was a fair charge for the use of the building. (*National Bank v. Marshall*, 26 Ill. App. 440.) Plaintiff made an offer for the bank building, but it was coupled with a condition which made it unavailable. He proposed to give $55,000 for the building, and complains that it was not accepted. His offer contemplated the giving of immediate possession, but existing contracts with parties who were occupying portions of the building precluded an acceptance. The defendants endeavored to sell the building to the plaintiff and to arrange the terms of sale so as to protect the rights of parties under these contracts, but plaintiff declined to accede to the conditions proposed. The charge of mismanagement will hardly lie against the defendants for their action in respect to either the sale or the lease of the building, nor in their refusal to accept any of the propositions of the plaintiff. Neither

5. Evidence— judgment, not disturbed. can we say, after a review of all the evidence, that a case was made out which required the appointment of a receiver. The judgment of the court will therefore be affirmed.